UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00146-TBR

COUNTRYWAY INSURANCE COMPANY                                    Plaintiff

v.

DANNY I. PITTMAN, JR., and                                     Defendants
PATSY CAROL PITTMAN

## MEMORANDUM OPINION

This matter is before the Court upon Defendants Danny I. Pittman, Jr., and Patsy Carol Pittman's (Mrs. Pittman) (collectively the "Pittmans") Motion to Dismiss Plaintiff Countryway Insurance Company's (Countryway) Petition for Declaration of Rights. (Docket No. 4.)  Countryway has responded, (Docket No. 5), and the Pittmans have replied, (Docket No. 12).  This matter is now ripe for adjudication.

The Pittmans ask the Court to decline to exercise its discretion in this declaratory judgment action and dismiss this case.  The Sixth Circuit has laid out five factors a district court should consider in deciding whether to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  *See Bituminous Cas. Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004).  Because the Court finds these factors weigh in favor of dismissal, the Pittmans' Motion to Dismiss, (Docket No. 4), will be GRANTED.

BACKGROUND

On May 6, 2012, Danny Irvan Pittman, Sr. (Mr. Pittman), now deceased, and Mrs. Pittman were involved in a traffic accident with another vehicle driven by James Sasse.  Mr. Pittman died at the accident scene, and Mrs. Pittman was seriously injured. Counsel for the Pittmans thereafter determined that Sasse did not have insurance coverage at the time of the accident and, thus, appeared to be an uninsured motorist. The Pittmans retained an expert to calculate the economic loss to the estate of Mr. Pittman.  That expert calculated the loss at over $1.6 million, exclusive of other damages such as Mrs. Pittman's loss of consortium or her own personal injuries.

Mr. Pittman had previously purchased an insurance policy from Countryway that provided benefits for both uninsured and underinsured motorist coverage.  The policy covered 17 vehicles owned by Mr. Pittman, and the uninsured motorist coverage applicable to each vehicle was $60,000.  Counsel for the Pittmans thereafter obtained underwriting information from Countryway to determine how the premium on the policy was calculated.  The parties disagree whether that underwriting information indicates that the premium was calculated based on the number of vehicles covered, which is the issue at the heart of Countryway's Petition for Declaration of Rights.

According to the Pittmans, their counsel submitted a demand to Countryway on August 30, 2012, demanding the policy limits for the death of Mr. Pittman in the amount of $1,020,000.  In that demand, the Pittmans argued that the coverage was calculated based on the fact that 17 vehicles were covered and that the premium was charged based on this number.  In short, the Pittmans argued that the $60,000 coverage

for each of the 17 vehicles should be "stacked."  Countryway disagreed, asserting that coverage was limited to $60,000 and that stacking was not appropriate.  Counsel for the Pittmans responded on September 27, 2012, notifying Countryway that the Pittmans would file suit within 20 days if Countryway refused to pay the benefits that the Pittmans maintained were due.  Countryway then initiated this action for declaratory judgment 18 days later on October 15, 2012.  (*See* Docket No. 1.)  Shortly thereafter, the Pittmans filed suit in Calloway Circuit Court against Sasse and Countryway.  (*See* Docket No. 4-6.)   In the Pittmans' state court complaint, they seek compensatory damages against Sasse, the alleged tortfeasor.  The Pittmans also state causes of action against Countryway for uninsured motorist benefits coverage, violations of the Kentucky Consumer Protection Act and Kentucky Unfair Claims Settlement Practices Act, and common law bad faith.

## STANDARD

District courts have discretion whether to exercise jurisdiction over an action brought under the Declaratory Judgment Act where a simultaneous state court action is pending.  *See* 28 U.S.C. § 2201(a); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Sixth Circuit has long cautioned district courts not to exercise jurisdiction over a declaratory judgment action "unless it serves a useful, practical purpose."  *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949).  When determining whether to exercise jurisdiction, the Court must consider five factors:

(1) whether the judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

> (3) whether the declaratory remedy is being used merely for the purposes of "procedural fencing" or "to provide an arena for a race to res judicata";
>
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy that is better or more effective.

*Bituminous*, 373 F.3d at 813 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

## DISCUSSION

Considering these criteria, the Court finds that the balance of these factors weighs against the exercise of jurisdiction. For this reason and those discussed more fully below, the Court will dismiss Countryway's declaratory judgment action.

## I.    Settling the Controversy and Clarifying the Legal Relations at Issue

Because the first two factors are closely related, Courts often consider them together. *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008); *Motorists Mut. Ins. Co. v. Thacker Mem'l Inc.*, 679 F. Supp.2d 802, 808 (E.D. Ky. 2010). A declaratory judgment by this Court would not settle the entire controversy between the Pittmans and Countryway. At best, it would clarify the legal relations as to the stacking issue.

Countryway argues that since it tendered payment of $60,000 to the Pittmans on October 26, 2012, a declaratory judgment that the policy does not allow for stacking would settle the Pittmans' claims of bad faith and violations of the Kentucky Consumer Protection Act because Countryway's liability would be discharged by that payment.

However, contrary to Countryway's position, a decision that the policy does not allow for stacking would not resolve all of those state law claims.  On this point, Countryway confuses *discharging its obligation to pay* with *having no obligation to pay*.  A declaratory judgment as to the latter would arguably defeat a state law claim of bad faith.  *See Wittmer v. Jones*, 864 S.W.2d 864, 890 (Ky. 1993) (identifying the first element to maintain a claim of bad faith as "the insurer must be obligated to pay the claim under the terms of the policy").  But a decision that Countryway has paid what it is obligated under the policy does not necessarily resolve the Pittmans' bad faith claims and would not end the controversy whether the Pittmans are entitled to additional relief against Countryway.  As a result, the Calloway Circuit Court would still have to hear and resolve at least one of the Pittmans' remaining claims against Countryway.  Therefore, the Court finds these two factors do not weigh in favor of exercising jurisdiction.

## II.     Procedural Fencing / A Race of Res Judicata

The third factor—whether the declaratory remedy is being used merely for the purposes of "procedural fencing" or "to provide an arena for a race to res judicata"—is meant to prevent parties from improperly using federal jurisdiction merely to gain a more favorable forum.  *See Flowers*, 513 F.3d at 558; *Motorists Mut. Ins. Co.*, 679 F. Supp. 2d at 809.  "The question is . . . whether the declaratory plaintiff has filed first in an attempt to get [its] choice of forum by filing first."  *AmSouth Bank v. Dale*, 386 F.3d 763, 789 (6th Cir. 2004).  Generally, the Sixth Circuit has advised that courts should be "reluctant to impute an improper motive to a [declaratory judgment] plaintiff where there is no evidence of such in the record."  *Flowers*, 513 F.3d at 558 (*citing, e.g.*,

*Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)). In that vein, the court of appeals has given a declaratory judgment plaintiff the benefit of the doubt that no improper motive fueled the filing of its action where that action was filed "after the state court litigation has begun." *Id.* (*citing Bituminous*, 373 F.3d at 814; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

The Pittmans claim that Countryway's motivation is clear in that Countryway filed this action in hopes of obtaining a more favorable decision in federal court than it would in state court. They point to the fact that Countryway filed this action after receiving notice that they intended to file suit and that Countryway did so within the twenty-day window the Pittmans left open in their final demand letter on September 27, 2012. Countryway does not directly refute this allegation in response.

In accordance with the Sixth Circuit's guidance, this Court is reluctant to impute an improper motive to Countryway's decision to initiate the instant declaratory judgment action. Still, the fact that Countryway filed suit first when there remains a colorable claim to coverage raises a viable argument that Countryway "has filed in an attempt to get [its] choice of forum by filing first." *See AmSouth* 386 F.3d at 789. The Court questions why else Countryway would have filed this action at the time it did and insist on bifurcating this matter between state and federal courts if not to use federal jurisdiction to gain what it perceives as a more favorable forum. Thus, to the extent this factor leans either way, the Court must conclude it does not weigh in favor of exercising jurisdiction.

### III.     Increased Friction Between Federal and State Courts

The U.S. Supreme Court has warned that "a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed" where a suit involving the same parties and dealing with the same state law issues is simultaneously pending in state court.  *Wilton*, 515 U.S. at 283 (internal alteration and citation omitted).  Accordingly, a district court must consider three additional subfactors to determine whether its exercise of jurisdiction would increase friction with state courts:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 560 (citing *Bituminous*, 373 F.3d at 814-15; *Roumph*, 211 F.3d at 968).

The first subfactor focuses on whether the district court's resolution of the declaratory judgment depends upon the state court's resolution of the underlying factual issues.  *See Flowers*, 513 F.3d at 560.  The question of the interpretation and scope of the Pittmans' insurance policy appears to present purely a question of law that does not necessarily require factual findings by the state court.  Thus, the first and second subfactors seem to favor exercising jurisdiction.

The third subfactor focuses on whether the legal issues implicate important state policies.  The Sixth Circuit has recognized on numerous occasions that state courts are in a better position to resolve insurance disputes because they are more familiar with state law and that because states regulate insurers, they are best situated to identify and enforce the state public policies underlying those regulations.  *E.g.*, *id.* at 561; *Bituminous*, 373 F.3d at 815; *accord Motorists Mut. Ins. Co.*, 679 F. Supp. 2d at 810.  In *Scottsdale Ins. Co. v. Flowers*, the Sixth Circuit expressly stated: "Interpretation of Kentucky insurance contracts is guided by state public policy."  513 F.3d at 561.  As both parties acknowledge, this case does not present a novel issue of state law as Kentucky courts have previously addressed the issue of benefits stacking in a number of cases.  Still, while district courts are not unfit to consider questions of state insurance law, the presence of this important state issue causes the third subfactor to weigh against exercising jurisdiction.

In sum, one of the three subfactors weighs against exercising jurisdiction while the other two weigh in favor.  Thus, although the Court accords considerable importance to the third subfactor, it cannot conclude that the "friction between federal and state courts" factor conclusively weighs either for or against exercising jurisdiction here.

## IV.     Availability of an Alternative Remedy

The fifth and final factor to be considered is whether an alternative remedy is available to the declaratory action plaintiff.  Here, Kentucky law clearly provides an alternative remedy to declaratory judgment in federal court by way of the Kentucky Declaratory Judgment Act, Ky. Rev. Stat. § 418.040.  Countryway argues that the

alternative of litigating this matter in Calloway Circuit Court would be no better than doing so here.  The Court, however, disagrees and finds that the state court remedy would be better insofar as it would be both more efficient and more complete.  Unlike this Court, which is limited to deciding the issue of stacking, the Calloway Circuit Court can address all of the issues in this case.  This would avoid the "confusing problems of scheduling" and res judicata were this matter to proceed simultaneously in two different courts.  *See Bituminous*, 373 F.3d at 812; *Motorists*, 679 F. Supp. 2d at 810.  The state court's ability to decide all the issues in this case would also provide a more complete remedy than this Court's limited ability to decide only the stacking issue under the policy.  Accordingly, the Court finds this factor weighs against exercising jurisdiction.

## V.      Balancing the Factors

In balancing these factors, the Court must rely on the "unique and substantial discretion" conferred on it by the Declaratory Judgment Act.  *See Wilton*, 515 U.S. at 286; *Flowers*, 513 F.3d at 563; *Motorists*, F. Supp. 2d at 811.  The Court finds the aggregate of the several factors weighs conclusively against exercising jurisdiction in this instance.  Allowing the parties to resolve all disputes in one court "promotes efficiency, builds trust in the legal system, and allows parties to preserve resources." *Motorists*, 679 F. Supp. 2d at 811.  While the stacking issue could be decided by this Court, other issues would remain unresolved and would still need to be dealt with by the state court.  Exercising jurisdiction would require the parties to litigate this dispute in two forums and, thus, expend extra resources and incur unnecessary expense.  There is also some indication that Countryway may have engaged in "procedural fencing" or a

"race for res judicata," which even if it does not weigh against, certainly does not weigh in favor of, exercising jurisdiction.  Moreover, by refusing to exercise its jurisdiction, the Court does not rob Countryway of its only available remedy; rather, Countryway has an adequate and, in fact, better remedy in a Kentucky state declaratory judgment action before the Calloway Circuit Court.  Accordingly, the Court finds these factors weigh against exercising its jurisdiction and in favor of dismissal.

## CONCLUSION

For these reasons, the Court, in its discretion, declines to exercise its jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and will GRANT Defendants' Motion to Dismiss, (Docket No. 4).

An appropriate Order of dismissal shall issue separately with this Opinion.

Date:

cc:      Counsel